**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANKIE M. A. P., ) | NO. ED CV 19-1430-E |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ANDREW SAUL, Commissioner of ) | **AND ORDER OF REMAND** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on August 1, 2019, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on September 16, 2019. Plaintiff filed a motion for summary judgment on December 17, 2019.

Defendant filed a motion for summary judgment on January 16, 2020. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed August 2, 2019.

**BACKGROUND**

Plaintiff asserts disability since October 2, 2013, alleging, inter alia, neck pain, back pain, joint pain and headaches (Administrative Record ("A.R.") 238-57, 273, 293). Treating physician Dr. Tobias Moeller-Bertram (sometimes erroneously referred to in the record as "Moeller-Berham") diagnosed migraines, "cervicalgia," cervical spondylosis with radiculopathy, and arthropathy/arthritis (A.R. 604, 633). Dr. Moeller-Bertram opined that Plaintiff cannot lift more than 10 pounds, cannot stand and walk more than two hours in an 8-hour day, cannot sit more than four hours in an 8-hour day, must alternate between sitting, standing and walking, must lie down several times a day, must elevate her feet, and has limitations with reaching, fingering, feeling, pushing and pulling (A.R. 603-05).

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 15-28, 35-71). The ALJ found that Plaintiff has severe degenerative disc disease of the cervical and lumbar spine, recurrent viral meningitis due to herpes simplex, affective disorder and anxiety disorder (A.R. 18). However, the ALJ also found Plaintiff capable of performing a range of light work, limited to: (1) standing or walking four hours in an 8-hour day, with the opportunity to sit for 15 minutes while remaining on task for every hour of combined standing and walking;

(2) occasional balancing, climbing ramps and stairs, stooping, kneeling, crouching and crawling; (3) no climbing of ladders, ropes and scaffolds; (4) frequent reaching, pushing and pulling with the upper extremities; (5) occasional overhead reaching with the upper extremities; (6) no work at unprotected heights, around moving machinery parts, operating motor vehicles, or work in more than moderate noise environments; (7) indoor work with only occasional exposure to direct sunlight or equivalent lighting; and (8) simple and routine tasks not performed at a production rate pace as with an assembly line. See A.R. 20-26 (adopting slightly a more restrictive residual functional capacity than did the State agency physician on reconsideration at A.R. 130-42). The ALJ deemed Dr. Moeller-Bertram's contrary opinions to have "no probative value" (A.R. 25). The ALJ identified certain light jobs Plaintiff assertedly could perform, and, on that basis, denied benefits (A.R. 27-28 (adopting vocational expert testimony at A.R. 65-67)). The Appeals Council denied review (A.R. 1-5).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

Plaintiff contends that the ALJ erred in the evaluation of Dr. Moeller-Bertram's opinions. The Court agrees.

///
///
///
///
///
///
///
///
///

**I.  Plaintiff's Treatment in Dr. Moeller-Bertram's Clinics Prior to the Opinions at Issue**

Dr. Moeller-Bertram and other providers from the Desert Clinic Pain Institute[1] treated Plaintiff monthly from August of 2015 through at least March of 2018 (A.R. 485-515, 569-71, 578-600, 606-09, 627-42, 757-845). Plaintiff initially complained of chronic pain, migraines, neck/arm pain with burning, numbness and tingling, and meningitis attacks in 2011, 2012 and 2013 (A.R. 486). Plaintiff reported a history of injection therapy with only temporary relief, and said she was taking opioids (Methadone), Gabapentin, Tizanidine, Diazepam, and antidepressants (Doxepin, Bupropion) (A.R. 486-87). On examination, Plaintiff reportedly had severely decreased range of motion with pain in the right shoulder, moderately decreased range of motion with pain in the cervical spine, tenderness to palpation of the left and right facet joints, pain with facet loading, 3/5 strength in the left lower extremity and 4/5 strength in right lower extremity (A.R. 487-89). The provider ordered additional testing, sought approval for a bilateral occipital nerve block, continued the Methadone and Gabapentin, discontinued Bupropion (Wellbutrin) and prescribed Cymbalta (A.R. 489-91).

///

///

---

[1] This entity is also referenced in the record as Desert Clinic Pain & Wellness, see A.R. 485, 573 (both entities have the same address/Tax ID number), and the Palm Springs Pain Institute, see A.R. 484-86, 564-65 (Desert Clinic Pain & Wellness' response to record request included records from Palm Springs Pain Institute).

In September of 2015, Plaintiff complained of head pain, arm pain, migraines three times a week, and constant neck and lower lumbar pain, at a level of 3/10 on her current pain medication (A.R. 492). Examination results were largely unchanged from the initial visit (A.R. 493-94). The provider continued Plaintiff's medications and also prescribed Valium (A.R. 494-96).

In October of 2015, Plaintiff complained of neck pain radiating to her shoulders, shooting pain in the upper extremities, back pain with leg numbness which resulted in her falling six times over the past month, and water retention in her feet (A.R. 497). Plaintiff reported that her medications were "managing" her pain, although she admitted taking more than the prescribed dosage (A.R. 497). MRI studies showed: (1) bilateral facet arthropathy in the lumbar spine at L3 to S1, without impingement potential; (2) mild to moderate spondylosis in the cervical spine at C3 to C7, with foraminal narrowing and loss of lordotic curvature; (3) moderate right foraminal narrowing in the cervical spine at C5-C6; (4) mild to moderate left and right sided foraminal narrowing in the cervical spine at C6-C7; and (5) mild to moderate right side foraminal narrowing in the cervical spine at C3-C4 (A.R. 497; see also A.R. 514-15 (September, 2015 cervical spine MRI report); A.R. 541-43 (August, 2015 thoracic, cervical and lumbar spine x-ray reports); A.R. 625 (January, 2014 cervical spine x-ray report)). Plaintiff rated her pain at 4/10 on her current medication (A.R. 497). She was diagnosed with, inter alia, headache, generalized muscle weakness, shoulder pain, low back pain and "cervicalgia" (A.R. 498). Approval again was requested for a cervical spine injection for neck/arm pain, and Plaintiff's

medications were continued (A.R. 499-500).

In November of 2015, Plaintiff complained of neck pain radiating to her upper extremities, low back pain preventing her from lifting herself from a sitting position and preventing her from squatting, worsening headaches and water retention in her feet (A.R. 501). Plaintiff reportedly had discontinued Cymbalta "due to becoming too aggressive" (A.R. 501). Plaintiff's nurse practitioner continued Plaintiff's medications (other than Cymbalta) (A.R. 502-03). The practitioner also opined that Plaintiff "is a candidate for neurosurgery" (A.R. 503).

In December of 2015, Plaintiff complained of increased pain at 8/10 because she then had no pain medication (A.R. 504). Plaintiff also complained of excessive bowel movements and continual weight gain (A.R. 504). Examination results were largely unchanged (A.R. 505). Plaintiff's medications were continued (A.R. 506-07).

In January of 2016, Plaintiff complained of constant, throbbing joint and neck pain at an intensity of 4/10 with medication (A.R. 569). The treatment note states that the pain "negatively affects the ability to perform the activities of daily life" (A.R. 569). Dr. Insun Lee diagnosed cervical radiculopathy and recommended a cervical spine injection (A.R. 570-71).

In February of 2016, Plaintiff complained of neck pain secondary to cervical radiculopathy at an intensity of 6/10, and Dr. Lee gave Plaintiff a cervical spine injection (A.R. 578-81). In March of 2016,

Plaintiff reported that the injection had given her 90 percent pain relief for less than two weeks, and also said she had a persistent migraine and hip pain with tingling and weakness (A.R. 582). Plaintiff indicated that, when her pain returned, she suffered weakness in her arms and an inability to lift them (A.R. 582). On examination, Plaintiff reportedly had reduced range of motion and pain in the cervical spine and lumbar spine, with 4/5 strength in the upper extremities and 5/5 strength in the lower extremities (A.R. 583). Dr. Lee requested a lumbar spine MRI (A.R. 583-86).

Plaintiff returned later in March of 2016, reporting chronic pain for which Dr. Moeller-Bertram admitted Plaintiff as a patient in the Clinic's "Center of Excellence" (A.R. 587). Plaintiff complained of neck and joint pain, stiffness/arthritis, ankle pain that made it difficult to walk, an inability to lift her arms above her head, migraines 2-3 times a week, and numbness in her ring and pinky fingers on both hands (A.R. 587). On examination, Plaintiff reportedly had moderately decreased range of motion in the cervical spine with pain, moderate tenderness to palpation of the lumbar facet joints and pain with facet loading (A.R. 590-91). Dr. Moeller-Bertram modified Plaintiff's medications and indicated an intention to consider bilateral occipital nerve blocks for headache management during future visits (A.R. 591-92).

In April of 2016, Plaintiff reported increased low back pain, right hip pain and left lower extremity numbness causing her to be "bed bound" (A.R. 593-94). Examination results were largely unchanged, except that Plaintiff had moderate sacroiliac joint

tenderness, lower extremity strength at 3/5, normal sensation in the lower extremities and mildly decreased right knee range of motion (A.R. 596-97). Dr. Moeller-Bertram prescribed Percocet, continued Plaintiff's other medications and ordered a right hip x-ray (A.R. 597-99).

In August of 2016, Plaintiff reported that she may have injured her left knee (A.R. 630). On examination, she reportedly had tenderness and pain, as well as limited range of motion (A.R. 632-33). She was assessed with arthropathy/arthritis and cervical spondylosis with radiculopathy (A.R. 633). Her medications were continued (A.R. 633-34). In September of 2016, Plaintiff complained of pain at 2/10 (on medication) and "arthritis type pain," and her medications were continued (A.R. 805-09).

**II. Dr. Moeller-Bertram's Opinions**

On September 14, 2016, Dr. Moeller-Bertram signed a form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" (A.R. 603-05). On this form, Dr. Moeller-Bertram opined, <u>inter alia</u>, that Plaintiff: (1) could lift and carry up to 10 pounds occasionally, less than 10 pounds frequently; (2) could stand and walk about two hours in an 8-hour day; (3) could sit about four hours in an 8-hour day; (4) could sit for 45 minutes and stand for 15 minutes before needing to change position; (5) must walk around every 45 minutes for 15 minutes at one time; (6) must be able to shift at will from sitting or standing/walking; (7) must lie down several times a day at unpredictable intervals; (8) could occasionally twist, crouch and

climb stairs, frequently stoop, but never climb ladders; (9) must elevate her feet for swelling in her feet and legs; and (10) would have her reaching, fingering, feeling, pushing and pulling affected by her impairments (A.R. 603-05). Dr. Moeller-Bertram indicated that the medical findings supporting these opinions included cervical radiculopathy, cervical spondylosis, arthropathy/arthritis, neck pain, migraines, uncontrollable bowel movements, swollen legs, knee numbness, sciatic nerve, tingling in the fingers and arm pain (A.R. 604).

### III. **The ALJ Erred in the Evaluation of Dr. Moeller-Bertram's Opinions.**

The ALJ wholly rejected Dr. Moeller-Bertram's opinions, stating:

> This checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. Dr. Moeller-Berham [sic] opined that the claimant could perform work at a less than sedentary exertion level as she had uncontrolled bowel movements, swollen legs, knee numbness, etc. . . . The undersigned finds this evidence has no probative value because any objective evidence does not support it.

(A.R. 25).
///
///

10

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (discussing deference owed to the opinions of treating and examining physicians). Even where the treating physician's opinions are contradicted, as here, "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).

The reasons the ALJ stated for rejecting Dr. Moeller-Bertram's opinions do not comport with these authorities. No evidence supports the ALJ's apparent conclusion that Dr. Moeller-Bertram completed the "checklist-style form" merely "as an accommodation" to Plaintiff. ALJs "may not assume that doctors routinely lie in order to help their patients collect disability benefits." Lester v. Chater, 81 F.3d 821, 832 (1995) (citation omitted). "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for

rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).[2]
Nor does the "checklist-style" of the form containing Dr. Moeller-
Bertram's opinions constitute a legitimate reason for rejecting those
opinions. See Trevizo v. Berryhill, 871 F.3d 664, 677 n.4 (9th Cir.
2017) ("the ALJ was not entitled to reject the responses of a treating
physician without specific and legitimate reasons for doing so, even
where those responses were provided on a 'check-the-box' form, were
not accompanied by comments, and did not indicate to the ALJ the basis
for the physician's answers. . . . [T]here is no authority that a
'check-the-box' form is any less reliable than any other type of form;
indeed, agency physicians routinely use these types of forms to assess
the intensity, persistence, or limiting effects of impairments")
(citation omitted); see also Popa v. Berryhill, 872 F.3d 901, 907 (9th
Cir. 2017) (nurse practitioner's use of a "check-box" form to list her
opinions did not provide a "germane" reason for the ALJ to reject
those opinions).

Further, the record belies the ALJ's assertion that Dr. Moeller-
Bertram provided only conclusions regarding functional limitations
without any "rationale" or "objective evidence" to support those
conclusions. Dr. Moeller-Bertram expressly referenced medical
findings assertedly supporting the specified functional limitations

---

[2] Respondent's citation of Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997) ("Saelee") is inapt. In Saelee, unlike the present case: (a) the ALJ cited evidence of "actual improprieties" in the physician's report; (b) the physician had admitted "he was unable to establish any organic basis for most of [the claimant's] complaints"; and (c) the physician had said he consequently had relied on "subjective allegations" by the claimant which the ALJ properly found "entirely untrustworthy." Id.

(A.R. 604).  Additionally, as summarized above, Plaintiff regularly treated with providers at Dr. Moeller-Bertram's pain clinics for over a year before Dr. Moeller-Bertram provided his opinions.  See A.R. 486 (location of initial treatment was the "Tobias Moeller-Bertram M.D. Corp." or Palm Springs Pain Institute).  Providers at these clinics, including Dr. Moeller-Bertram, examined Plaintiff, reviewed imaging studies, treated Plaintiff with opioid pain medications and also tried epidural steroid injections.  The pain clinics' treatment records, summarized above, contain "objective evidence" providing some support for Dr. Moeller-Bertram's opinions.  The ALJ erred in failing to state legitimate reasons for rejecting Dr. Moeller-Bertram's opinions under the circumstances of this case.  See Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ erred by discrediting treating physician's assessments made on "check-box" form where, although the form contained "almost no detail or explanation," the assessments were consistent with the treatment records and the claimant's testimony).

    Moreover, if the ALJ believed he needed a more detailed explanation to evaluate Dr. Moeller-Bertram's opinions, the ALJ should have developed the record more fully.  See Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.  He could also

have continued the hearing to augment the record") (citations omitted); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered").

### III. The Court is Unable to Deem the ALJ's Error Harmless; Remand for Further Administrative Proceedings is Appropriate.

The Court is unable to conclude that the ALJ's error in evaluating Dr. Moeller-Bertram's opinions was harmless. See Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's error. McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district

court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d at 1020 (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"). There remain significant unanswered questions in the present record.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 3, 2020.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE